IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>JESSE FERNANDO PEREZ,   )<br>Defendant.   )<br>)  | Criminal Case No. 3:23CR19 (RCY) |

### MEMORANDUM OPINION

This matter is before the Court on Defendant Jesse Fernando Perez's Motion for Judgment of Acquittal (ECF No. 38). The Defendant seeks a judgment of acquittal, arguing that the Government did not adequately establish that the relevant events took place within the special territorial jurisdiction of the United States. For the reasons stated below, the Court will deny the Defendant's Motion.

### I. BACKGROUND

On August 7, 2023, following a bench trial, this Court found Defendant Jesse Fernando Perez ("Mr. Perez," or "the Defendant") guilty of production and possession of obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. §§ 1466A(a)(1) and (b)(1). Def.'s Mot. J. Acquittal ("Mot.") 1, ECF No. 38. For both counts, there is a jurisdictional element. *See* § 1466A(d). At trial, this Court found applicable the element that the relevant offenses were committed "in the special . . . territorial jurisdiction of the United States." Mot. 1. Following trial, Defendant timely filed the instant Motion for Judgment of Acquittal (the "Motion," ECF No. 38). In the Motion, Defendant submits one main argument: that the evidence at trial failed to prove that FCI Petersburg is within the special maritime or territorial jurisdiction of the United States. Mot.

1

1–2. Defendant contends that, as a result, the jurisdictional element of § 1466A has not been satisfied. *See id.*

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 29 ("Rule 29") provides in relevant part, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). While Rule 29 specifically refers to the jury trial context, it applies with equal force to bench trials. *Compare Glasser v. United States*, 315 U.S. 60, 80 (1942) (jury trial), *with United States v. Ismail*, 97 F.3d 50, 55 (4th Cir. 1996) (bench trial); *see also United States v. Kokayi*, No. 1:18-CR-410 (LMB), 2019 WL 2997384, at *1 (E.D. Va. July 9, 2019), *aff'd*, No. 19-4510, 2021 WL 3733010 (4th Cir. Aug. 24, 2021).

In considering a motion for judgment of acquittal, a court must "sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'" *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).[1] "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (quoting *Burgos*, 94 F.3d at 862). A court should consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence is not inherently less valuable or less probative than direct evidence and may alone support a guilty verdict." *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008) (internal quotation marks and citation omitted).

---

[1] As noted in *Kokayi*, the standard of review under Rule 29 is "the same whether the trial was before a jury or before the court." *Kokayi*, 2019 WL 2997384 at *1.

### III. DISCUSSION

The Defendant's main contention in his Motion for Judgment of Acquittal is that the evidence adduced at trial failed to prove that FCI Petersburg is within the special territorial jurisdiction of the United States. *See* Mot. 2, 7. Specifically, the Defendant argues that the trial evidence was "insufficient to rebut the presumption against [federal] jurisdiction and prove beyond a reasonable doubt the jurisdictional element of 18 U.S.C. § 113(a)(5)." *Id.* at 7. In response, the Government argues both that this Court can take judicial notice that the federal government has jurisdiction over FCI Petersburg and that the trial evidence was sufficient to establish the jurisdictional element required for a conviction under § 1466A(d)(5). *See* Gov't's Resp. 2–5, 6–7 (ECF No. 42). The Court agrees with the Government on both grounds.

**A. The Court Can and Does Take Judicial Notice of the Fact that FCI Petersburg Is Within the Special Territorial Jurisdiction of the United States**

While the geographical "locus of [an] offense . . . is an issue for the trier of fact," "[i]t is well established that a [federal] court may determine, as a matter of law, 'the existence of federal jurisdiction over the geographic area.'" *United States v. Bridges*, No. 94-5130, 1994 WL 687301, at *1 (4th Cir. Dec. 9, 1994) (unpublished opinion) (quoting *United States v. Warren*, 984 F.2d 325, 327 (9th Cir. 1993)); *see also United States v. Lavender*, 602 F.2d 639, 641 (4th Cir. 1979) (taking judicial notice that the relevant crimes had occurred within the "special maritime and territorial jurisdiction" of the United States); *accord United States v. Davis*, 726 F.3d 357, 368 (2d Cir. 2013). Such is the case, in part, because federal jurisdiction over a geographic location is a legislative fact—a fact that is "fixed [and] does not change from case to case." *United States v. Gavegnano*, 305 Fed. App'x 954, 956–57 (4th Cir. 2009) (unpublished opinion); s*ee United States*

3

*v. Love*, 20 F.4th 407, 411 (8th Cir. 2021). And legislative facts—unlike adjudicative facts[2]—are not subject to the strictures of Federal Rule of Evidence 201. *See* Fed. R. Evid. 201(a) (noting that this rule "governs judicial notice of an adjudicative fact only, not . . . legislative fact[s]"); Fed. R. Evid. 201(a) advisory committee note to 1972 proposed rules ("[N]o rule deals with judicial notice of 'legislative' facts."). Accordingly, there are no meaningful procedural restrictions concerning when—or how—a legislative fact may be judicially noticed. *See, e.g.*, *Lavender*, 602 F.2d at 641 (taking judicial notice for the first time on appeal, despite district court's failure to do so); *United States v. Johnson*, No. 3:17-CR-136-HEH, 2018 WL 1023355, at *3 (E.D. Va. Feb. 22, 2018), *aff'd*, 738 F. App'x 798 (4th Cir. 2018) (taking judicial notice on appeal from magistrate judge's decision); Fed. R. Evid. 201 advisory committee note to 1972 proposed rules ("[T]he judge is unrestricted in his investigation and conclusion" concerning "judicial access to legislative facts."); 1 MUELLER & KIRKPATRICK, FED. EVID. § 2:12 (4th ed.) ([T]he Rules do not regulate . . . any aspect of noticing legislative facts.").

Relying upon the adjudicative-legislative fact dichotomy, numerous courts both within and without the Fourth Circuit have taken judicial notice of federal jurisdiction.[3] For instance, in *Hernandez-Fundora*, the Second Circuit held that the district court was "entitled to determine that [a federal correctional facility] falls within the special maritime and territorial jurisdiction of the

---

[2] Adjudicative facts are "facts of the particular case," such as the geographic location where a crime occurred. Fed. R. Evid. 201(a) advisory committee's note to 1972 Proposed Rules; *see Davis*, 726 F.3d at 368 (noting generally that the physical location in which a crime occurred is a "factual question for the jury decide," while jurisdictional questions are "legal question[s] that a court may decide on its own.").

[3] The First Circuit appears to be the only circuit to face this issue and determine that the jurisdictional question involves adjudicative facts, rather than legislative. *See United States v. Bello*, 194 F.3d 18, 22–23 (1st Cir. 1999). However, even in *Bello*, the court still found that a federal correctional facility's location within the jurisdiction of the United States was an adjudicative fact susceptible to judicial notice under Federal Rule of Evidence 201(b). *See id.* Per the court, "judicial notice was proper . . . based on 'sources whose accuracy cannot reasonably be questioned.' . . . . [T]he existence of independent and undisputed . . . evidence . . . provided a sufficient basis for judicial notice." *Id.* at 23–24. The only practical difference was that the court had to abide by the strictures of Rule 201. *See id.* at 22–24.

United States . . . [because] any factual issue whose resolution is necessary to a determination of such a . . . jurisdictional issue would invoke judicial notice of legislative facts." *United States v. Hernandez-Fundora*, 58 F.3d 802, 812 (2d Cir. 1995). Relying on *Hernandez-Fundora*, the Second Circuit in *Davis* again found that a federal prison fell "within the special . . . territorial jurisdiction of the United States." *Davis*, 726 F.3d at 369. Of particular note, the *Davis* court stated, "to determine whether a crime took place within the special maritime and territorial jurisdiction of the United States requires two separate inquiries: one to determine the 'locus of the crime' and one to determine the existence . . . of federal jurisdiction." *Id.* at 368. The court continued, "[T]he former is plainly a factual question for the jury to decide, [but] the latter—turning on a fixed legal status that does not change from case to case[—]has always been treated . . . as a legal question that a court may decide on its own." *Id.* *Davis* has since been cited approvingly by courts within this district. *See, e.g., Johnson*, 2018 WL 1023355 at *3.

The Fifth and Eighth Circuits have likewise held that whether a given location falls within federal jurisdiction is a legislative fact appropriate for judicial notice. *See United States v. Bowers*, 660 F.2d 527, 530–31 (5th Cir. 1981) ("The fact that Fort Benning is under federal jurisdiction is a well established fact appropriate for judicial notice. . . . Unlike an adjudicative fact, this fact does not change from case to case but, instead, remains fixed."); *United States v. Love*, 20 F.4th 407, 411–12 (8th Cir. 2021) ("[F]acts that resolve the special maritime and territorial jurisdiction question are legislative, not adjudicative. . . . A district court may take judicial notice that a place is within the special maritime and territorial jurisdiction of the United States."). The Fourth Circuit has similarly acknowledged the propriety of judicially noticing the existence of federal jurisdiction over a given area.[4] *See, e.g., Lavender*, 602 F.2d at 641; *Bridges*, 1994 WL 687301 at *1.

---

[4] While the Fourth Circuit has not comprehensively examined the issue of whether jurisdictional questions involve legislative or adjudicative facts, it has upheld district court decisions adopting the former position. *See, e.g.,*

5

Applying the above principles to this case, the Court finds no difficulty in taking judicial notice that FCI Petersburg is indeed within the special territorial jurisdiction of the United States, pursuant to 18 U.S.C. § 7. The first step, as noted in *Bridges*, is the factual question concerning where the offense was committed. *See Bridges*, 1994 WL 687301 at *1. Defendant concedes that trial evidence established that "the crime occurred at FCI Petersburg; and that FCI Petersburg is a federal prion operated by the Bureau of Prisons." Mot. 1.

Once the factual question is resolved, "a court may determine, as a matter of law, 'the existence of federal jurisdiction over the geographic area" in which the offense took place. *Bridges*, 1994 WL 687301 at *1. This Court therefore takes judicial notice that FCI Petersburg, a federal prison, falls under federal jurisdiction. Such a determination is compelled by the abundance of caselaw explicitly holding that federal prisons fall within the special maritime and territorial jurisdiction of the United States. *See, e.g., United States v. Blunt*, 558 F.2d 1245, 1246–47 (6th Cir. 1977) ("We reject the . . . premise . . . that the government is required to show a chain of title for a federal prison to establish the territorial jurisdiction of the United States. . . . It is undisputed that the assault occurred within the federal prison itself. The district court would have been correct in taking judicial notice . . . of the fact that the [prison] was within the territorial jurisdiction of the United States."); *Davis*, 726 F.3d at 368–69 (holding that a federal prison was within the special maritime and territorial jurisdiction of the United States); *Hernandez-Fundora*, 58 F.3d at 812 (same); *United States v. Inoue*, No. ED CR 09-380(A) VAP, 2010 WL 11537485, at *3 (C.D. Cal. Aug. 11, 2010), *aff'd*, 463 F. App'x 643 (9th Cir. 2011) (same, and collecting

---

*United States v. Johnson*, No. 3:17-CR-136-HEH, 2018 WL 1023355 (E.D. Va. Feb. 22, 2018), *aff'd per curiam*, 738 F. App'x 798 (4th Cir. 2018) ("[T]he district court did not err in taking judicial notice that the McGuire VA hospital is within the special maritime and territorial jurisdiction of the United States." (citing *Davis*, 726 F.3d 357 at 367 ("whether a particular plot of land falls within the special maritime and territorial jurisdiction of the UniteD States is a 'legislative fact' that may be judicial noticed."))).

cases wherein other courts have determined that federal prisons fall within the special maritime and territorial jurisdiction of the United States).

Setting aside the more directly on-point caselaw outlined above, Fourth Circuit precedent likewise supports the conclusion that FCI Petersburg is within the special maritime and territorial jurisdiction of the United States. In *United States v. Erdos*, the Fourth Circuit analyzed the statutory section presently at issue—18 U.S.C. § 7(3). *See United States v. Erdos*, 474 F.2d 157, 159 (4th Cir. 1973). 18 U.S.C. § 7 reads as follows:

> The term 'special maritime and territorial jurisdiction of the United States', as used in this title, includes: . . . (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, *or* any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3) (emphasis added). Noting that this section is "not framed in the language of conveyancing," the Fourth Circuit held that the relevant test pursuant to this section and concerning "property within or without the United States, [is] one of practical usage and dominion exercised over the . . . federal establishment by the United States government." *Erdos*, 474 F.2d at 159.

A review of the relevant facts sufficiently establishes that the federal government exercises the sort of "practical usage and dominion" over FCI Petersburg that the *Erdos* court contemplated. *See id.* As the evidence at trial revealed, FCI Petersburg is a federal prison, run by the Federal Bureau of Prisons, which houses inmates convicted of federal crimes. Gov't's Resp. 6. This sort of ownership and operation certainly represents "practical usage and dominion . . . over the federal establishment" sufficient to establish federal jurisdiction. *See, e.g., Blunt*, 558 F.2d at 1247 (relying on the *Erdos* test to summarily take judicial notice that a federal prison was within the special maritime and territorial jurisdiction of the United States); *Inoue*, 2010 WL 11537485 at *3 (same); *see also United States v. Corey*, 232 F.3d 1166, 1177–78 (9th Cir. 2000) (adopting the

*Erdos* "practical dominion" test for determining whether the United States had special maritime or territorial jurisdiction).

While the Defendant lodges various arguments against the exercise of federal jurisdiction over this matter, they all come up short. Defendant first briefly suggests that the jurisdictional elements of a criminal statute must be proved beyond a reasonable doubt, pursuant to the Supreme Court's decision in *United States v. Torres*. Mot. 2. However, in urging such a reading, the Defendant asks the court to "uproot the deeply entrenched distinction between law [jurisdiction] and fact [where the crime occurred]." *Johnson*, 2018 WL 1023355 at *2. Like the *Johnson* court, this Court declines to cast aside this distinction in favor of an "unorthodox view of the law based upon a narrow construction of a single sentence that is not central to the holding of an otherwise unrelated Supreme Court decision." *Id.*

Next, the Defendant points to 40 U.S.C. § 255 to support his argument that "it is 'conclusively presumed that jurisdiction has not been accepted'" by the federal government unless there is an affirmative act of acceptance by the head of the relevant federal agency. Mot. 2–3 (quoting 40 U.S.C. § 255). However, Defendant's invocation of § 255 is misplaced. As the properly considered[5] exhibits to the Government's Response indicate, the land on which FCI Petersburg sits was designated as federal land in 1930—ten years before § 255 was codified. Any presumption created by 40 U.S.C. § 255 is therefore inapplicable to the land in question, and in fact, the opposite presumption applies. *See Love*, 20 F.4th at 410 ("For land acquired before 1940, federal acceptance of jurisdiction is presumed in the absence of contrary evidence. . . . For land acquired after 1940, there is a presumption *against* federal acceptance of jurisdiction." (citing

---

[5] As discussed *supra*, the Federal Rules of Evidence do not constrain this Court in its consideration and investigation of legislative facts, such as whether FCI Petersburg is within the special maritime and territorial jurisdiction of the United States. In turn, the Court may consider these exhibits, as well as other materials it deems relevant in this inquiry.

*United States v. Redstone*, 488 F.3d 300, 302 (8th Cir. 1973); 40 U.S.C. § 255) (emphasis in original).

Finally, the Defendant makes several arguments regarding the purported inapplicability of *Erdos* to this case. However, as the above analysis indicates, (1) the Court is entitled to take judicial notice of federal jurisdiction over FCI Petersburg regardless, and most courts facing this issue and armed with similar evidence have held that federal prisons fall within the special maritime and territorial jurisdiction of the United States; and (2) to the extent this Court relies on *Erdos*, it is indeed proper to do so under these circumstances. *See, e.g., Blunt*, 558 F.2d at 1247 (relying on the *Erdos* test to judicially notice that a federal prison was within the special maritime and territorial jurisdiction of the United States); *Inoue*, 2010 WL 11537485 at *3 (same, and collecting cases where other courts have held similarly).

**B. The Evidence at Trial Was Sufficient to Support a Finding That FCI Petersburg Is Within the Special Maritime and Territorial Jurisdiction of the United States**

Notwithstanding the Court's ability to presently take judicial notice of federal jurisdiction over FCI Petersburg, the evidence at trial was also sufficient to support a finding under *Erdos* that FCI Petersburg is within the special maritime and territorial jurisdiction of the United States.

As outlined above, 18 U.S.C. § 7(3) is "not framed in the language of conveyancing." *United States v. Erdos*, 474 F.2d 157, 159 (4th Cir. 1973). Instead, the relevant test pursuant to this section, and concerning "property within or without the United States, [is] one of practical usage and dominion exercised over the . . . federal establishment by the United States government." *Id.* at 159. A review of the evidence adduced at trial reveals that the federal government exercises the requisite "practical usage and dominion" over FCI Petersburg. *See id.* FCI Petersburg is a federal prison, run by the Federal Bureau of Prisons, which houses federally convicted inmates. Gov't's Resp. 6. This degree of ownership and operation surely represents "practical usage and

9

dominion . . . over the federal establishment" sufficient to establish federal jurisdiction. *See, e.g., Blunt*, 558 F.2d at 1247 (holding that evidence establishing that the defendant had committed a crime within a federal correctional facility was sufficient to satisfy the "practical usage and dominion" test from *Erdos* ); *Inoue*, 2010 WL 11537485 at *3 (same).

Lastly, despite the Defendant's arguments to the contrary, it is indeed proper for this Court to rely on *Erdos* to make such a jurisdictional determination. Numerous courts in the Fourth Circuit and beyond have properly applied *Erdos* beyond its original factual context to make similar determinations under 18 U.S.C. § 7(3). *See, e.g., United States v. Morton*, 314 F. Supp. 2d 509, 512–14 (D. Md. 2004) (applying the *Erdos* test outside of its original context); *Blunt*, 558 F.2d at 1247 (same); *Corey*, 232 F.3d 1177–78 (same); *Inoue*, 2010 WL 11537485 at *3 (same).

## IV. CONCLUSION

For the reasons stated above, the Court finds that FCI Petersburg is within the special maritime and territorial jurisdiction of the United States, pursuant to 18 U.S.C. § 7(3), and that the facts supporting this finding both were adduced at trial, and in the alternative, are available for judicial noticing. Defendant's Motion for Judgment of Acquittal will accordingly be denied.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: October 25, 2023