IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:23CR19 (RCY) |
| | ) | |
| JESSE FERNANDO PEREZ, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter came before the Court for a bench trial on August 3, 2026, following remand from the United States Court of Appeals for the Fourth Circuit to determine whether the Federal Correctional Institution Petersburg ("FCI Petersburg") falls within the special maritime and territorial jurisdiction of the United States under 18 U.S.C. § 7(3). This Order memorializes the Court's ruling from the bench at the conclusion of the trial.

## I.  JUDICIAL NOTICE & APPLICABLE LEGAL STANDARD

On remand, the Court was tasked with applying 18 U.S.C. § 7(3)'s three-part test to properly take judicial notice[1] of the fact that FCI Petersburg falls within federal territorial jurisdiction. *United States v. Perez*, 150 F.4th 237, 251–52 (4th Cir. 2025).

That inquiry requires the Court to determine whether (1) the United States acquired the property; (2) Virginia consented to federal jurisdiction or ceded its own jurisdiction; and (3) the United States accepted jurisdiction. The first and third requirements are not disputed: Defendant concedes that the United States acquired the land upon which FCI Petersburg sits in or around 1919 for purposes of establishing Camp Lee (now known as Fort Lee), and, because that

---

[1] Because the Court, on remand, ordered the parties to brief the issue of FCI Petersburg's jurisdictional status, the Court is no longer taking judicial notice of jurisdictional facts and instead is making findings based on the legislative history presented on the record. However, the Court issues this Memorandum Order in part to preserve such record and findings for ease of future judicial notice.

acquisition occurred before 1940, federal acceptance is presumed, *id.* at 240.  Thus, only the second element is at issue:  whether Virginia consented to federal jurisdiction over the property or otherwise ceded its jurisdiction when the United States acquired the land in 1919, notwithstanding the federal government's subsequent conversion of portions of Camp Lee into FCI Petersburg beginning around 1930.  The Court concludes that it did.

## II.  ANALYSIS

The Court first considers Chapter 382 of the 1918 Acts and Joint Resolutions of the General Assembly ("Chapter 382"), enacted on March 16, 1918.[2]  Chapter 382 codifies Virginia's consent to the federal acquisition of and jurisdiction over, *inter alia*, lands for cantonments, military camps, and other military or naval purposes and provided that the jurisdiction ceded would continue while the United States owned or occupied the property.  Gov't's Ex. 1 at A11, ECF No. 86-1.  Chapter 382 repealed all prior legislative acts or parts of acts to the extent inconsistent with its provisions.  *Id.*  Notably, Chapter 382 does not contain a reversion clause that claws back state jurisdiction in the event of some material change to the purpose and use of the property.[3]  *See generally id.*  Because the United States acquired the property at issue as part of Camp Lee after Chapter 382's enactment, and because Chapter 382 explicitly repealed "[a]ll acts or part of acts in conflict with [Chapter 382]," *id.*, the Court finds that Chapter 382 applies to the federal government's acquisition of Camp Lee.  *See United States v. Lovely*, 319 F.2d 673, 679–80 (4th Cir. 1963) ("It

---

[2] The Government provided these legislative materials, in addition to Chapter 610 of the 1936 Acts of the General Assembly of the Commonwealth of Virginia ("Chapter 610"), enacted on March 28, 1936, both at trial, *see* ECF No. 93, and as Exhibit 1 to its pretrial jurisdictional brief, *see* ECF No. 86-1.  Defendant stipulated to the admissibility of this legislative record.  *See* ECF No. 92.  For consistency, the Court utilizes the pagination appearing on Government's Exhibit 1 for all citations to these enactments.

[3] This stands in contrast with the earlier enactment on which Defendant would have the Court rely, Title 3, Chapter 4, Section 19 of the 1918 Virginia Code, which passed into law on March 8, 1918, and which codified Virginia's consent to the federal acquisition of and (resultingly) federal jurisdiction over Virginia lands but provided that federal jurisdiction would cease if "the purposes of any grant to the United States shall cease" or the United States failed for five consecutive years to use the property for the purposes of the grant.  *See* Gov't's Ex. 1 at A4.

is a universally accepted rule of statutory construction that where a later act purports to cover the whole subject covered by an earlier act, embraces new provisions, and plainly shows that it was intended not only as a substitute for the earlier act but also to cover the whole subject involved and to prescribe the only rules with respect thereto, the later act operates as a repeal of the earlier act even though it makes no reference to the earlier act. [(collecting cases)].").

The Court next considers Chapter 610 of the 1936 Acts of the General Assembly of the Commonwealth of Virginia ("Chapter 610"), enacted on March 28, 1936, which reinforces its conclusion with respect to Virginia's consent to jurisdiction by way of Chapter 382. Specifically, Chapter 610 "amended and re-enacted" Section 19 of the 1918 Virginia Code ("Section 19"), *see supra* n.2, while simultaneously repealing Chapter 382. Gov't Ex. 1 at A19, A22. Such a maneuver by the Virginia General Assembly supports the view that Chapter 382 had displaced Section 19 to the extent the two were inconsistent—e.g., by merit of Section 19's reversion clause; otherwise, the General Assembly's decision to re-enact Section 19 while repealing Chapter 382 would have little apparent effect.

Moreover, Chapter 610 independently supplies the consent required by § 7(3). In amending and re-enacting Section 19, Virginia consented to federal acquisition (and commensurate jurisdiction) for, *inter alia*, any "other purpose embraced within the provisions of the seventeenth clause of the eighth section of Article one of the Constitution of the United States." *Id.* at A20–21. That provision—the Enclave Clause—conceives of federal acquisition of property with state consent for "Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. The Supreme Court has construed the phrase "needful Buildings" to encompass "whatever structures are found to be necessary in the performance of the functions of the Federal Government," *Silas Mason Co. v. Tax Comm'n of Wash.*, 302 U.S. 186, 203 (1937),

3

and the Second Circuit has specifically applied that principle to federal prisons, *United States v. Davis*, 726 F.3d 357, 369 (2d Cir. 2013).  Chapter 610's incorporation of the Enclave Clause therefore supplied Virginia's consent to federal jurisdiction over property ceded by the state and thereafter used for federal prison purposes.[4]

Accordingly, based on the foregoing legislative enactments, the Court FINDS that Virginia consented to federal jurisdiction over the property that now constitutes FCI Petersburg and that this fact, coupled with the other undisputed requirements of 18 U.S.C. § 7(3), establishes that FCI Petersburg falls within the special maritime and territorial jurisdiction of the United States.

### III.  CONCLUSION

Having determined, based on the legislative record, that FCI Petersburg falls within the special maritime and territorial jurisdiction of the United States and thus that the jurisdictional predicate to the presently charged offenses is satisfied, *see* 18 U.S.C. § 1466A(d), the Court FINDS Defendant guilty of production and possession of obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C.  §§ 1466A(a)(1) and (b)(1).

An appropriate Order will issue.

/s/ _____
Roderick C. Young
United States District Judge

Date:  August 12, 2026
Richmond, Virginia

---

[4] The fact that prison operations at Camp Lee began before Chapter 610's enactment does not alter that conclusion.  A State may cede jurisdiction after the United States has acquired the property.  *See Paul v. United States*, 371 U.S. 245, 264 (1963).  Thus, even assuming Defendant is correct that Section 19's original reversion provision remained operative and that the transition from military to prison use caused federal jurisdiction to lapse, Chapter 610 subsequently supplied the requisite consent, and this consent remained in place at the time of the Defendant's offense.